[No. B245131. Second Dist., Div. Five. July 11, 2016.]

CENTER FOR BIOLOGICAL DIVERSITY et al., Plaintiffs and Respondents, v.
DEPARTMENT OF FISH AND WILDLIFE, Defendant and Appellant;
THE NEWHALL LAND AND FARMING COMPANY, Real Party in Interest and Appellant.

**COUNSEL**

Thomas R. Gibson, Wendy L. Bogdan and John H. Mattox; Thomas Law Group, Tina A. Thomas, Ashle T. Crocker and Amy R. Higuera for Defendant and Appellant.

Gatzke Dillon & Ballance, Mark J. Dillon, David P. Hubbard; Morrison & Foerster, Miriam A. Vogel; Nielsen Merksamer Parinello Gross & Leoni, Arthur G. Scotland; Downey Brand and Patrick G. Mitchell for Real Party in Interest and Appellant.

John Buse, Adam Keats; Chatten-Brown and Carstens, Jan Chatten-Brown and Doug Carstens for Plaintiffs and Respondents Center for Biological Diversity, Friends of the Sara Clara River, Santa Clarita Organization for Planning and the Environment and California Native Plant Society.

Jason Weiner; Chatten-Brown and Carstens, Jan Chatten-Brown and Doug Carstens for Plaintiffs and Respondents Wishtoyo Foundation/Ventura Coastkeeper.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

Defendant, Department of Fish and Wildlife (the department), and real party in interest, The Newhall Land and Farming Company (the developer), appeal from a judgment granting a mandate petition. The judgment, entered October 15, 2012, was granted in favor of plaintiffs Center for Biological Diversity; Friends of the Santa Clara River; Santa Clarita Organization for Planning the Environment; Wishtoyo Foundation/Ventura Coastkeeper; and California Native Plant Society. The litigation and appeal arise from the department's December 3, 2010 certification of the revised final environmental impact statement and impact report; approval of the Newhall Ranch Resource Management and Development Plan (resource management and development plan); the adoption of the Spineflower Conservation Plan and Master Streambed Alteration Agreement (streambed alteration agreement); and issuance of two incidental take permits. We issued an opinion reversing the October 15, 2012 judgment. (*Center for Biological Diversity v.*

*Department of Fish & Wildlife* (Cal.App.).) Our Supreme Court granted review and, after issuing an opinion, remanded the case to us. (*Center for Biological Diversity v. Department of Fish & Wildlife* (2015) 62 Cal.4th 204, 241 [195 Cal.Rptr.3d 247, 361 P.3d 342] (*Center for Biological Diversity*).)

In the published portion of this opinion, we will discuss the developer's contention, concurred in by the department, that we should supervise compliance with a writ of mandate. As will be noted, the developer and the department argue we should in essence issue our own writ of mandate and then supervise compliance with our orders. This contention is based upon language appearing in Public Resources Code[1] section 21168.9, subdivision (a) and our Supreme Court's opinion. As will be noted, we conclude we do not have that authority since we are reviewing this case on direct appeal. Our disposition is to reverse the judgment in part and affirm it in part.

II.–IV.[†]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## V.  THE SCOPE OF OUR REMAND ORDER

### A.  The Parties' Remand Arguments

The trial court ruled that six aspects of the environmental impact report were deficient and entered a stay of any construction on the project site. The trial court ruled the following errors appeared in the environmental impact report: the department failed to prevent the taking of the unarmored threespine stickleback as part of construction of a bridge over the Santa Clara River; the environmental impact report failed to assess the impact of project-related dissolved copper discharge when stormwaters breached the dry gap; the department's analysis of mitigation measures for the San Fernando Valley spineflower was legally impermissible; the department's assessment of the

---

[1] Future statutory references, unless otherwise stated, are to the Public Resources Code. Future references to "Guidelines" are to the regulatory provisions located in California Code of Regulations, title 14, section 15000 et seq. The Guidelines are promulgated by the Natural Resources Agency to implement the California Environmental Quality Act. (§ 21083, subd. (e); *Neighbors for Smart Rail v. Exposition Metro Line Construction Authority* (2013) 57 Cal.4th 439, 448, fn. 4 [160 Cal.Rptr.3d 1, 304 P.3d 499].)

[†] See footnote, *ante*, page 452.

project's greenhouse gas emissions were inadequate; the environmental impact reports assessment of the project's impact on Native American cultural resources was not supported by substantial evidence; and the environmental impact report improperly relied upon portions of the specific plan in rejecting alternatives to the project. We reversed in their entirety the trial court's findings as to the effects of dissolved copper runoff on steelhead smolt; the San Fernando Valley spineflower preserves; Native American resources; and reliance upon the specific plan. We have reversed in part the trial court's greenhouse gas emission findings concerning selection of a criterion of significance and its application to a business as usual scenario. We have affirmed the trial court's greenhouse gas findings concerning the absence of substantial evidence to support the no significant impact finding. We have affirmed the trial court's findings disapproving mitigation measures BIO-44 and BIO-46, which arise from the construction of a bridge over the Santa Clara River.

After our Supreme Court issued its opinion, the developer filed a motion regarding remand concerning the scope of our ruling, which is concurred in by the department. Plaintiffs have filed an opposition to some of the developer's arguments. The developer and the department argue our Supreme Court's opinion permits us to retain jurisdiction to supervise the completion of the environmental review process. The developer argues as follows in part: "[T]he superior court judge who heard and decided this case (Hon. Ann I. Jones) is no longer hearing mandate petitions, and this case has been reassigned to the Hon. John A. Torribio. Although Judge Torribio decided the related cases (*Friends of the Santa Clara River v. County of Los Angeles*, No. B256125, and *California Native Plant Society v. County of Los Angeles*, No. B258090, both of which are still pending before the Supreme Court as 'grant and holds' ancillary to this case), Judge Torribio is not familiar with the facts of this case (this case has never been before him.) Accordingly, remand to the superior court would necessarily result in delays that are to be avoided in [California Environmental Quality Act] litigation." In addition, the developer and the department argue that this court is intimately familiar with this case. According to the developer and the department, by retaining jurisdiction, this court's familiarity with the case will ameliorate the potential prejudice caused by the delays to date. The developer concludes: "We ask this [c]ourt to reaffirm its original holding concerning the merits of the steelhead and cultural resources claims; retain jurisdiction of the greenhouse gas and unarmored threespine stickleback issues; and use [the developer's] proposed writ as a guide for this court. . . ."

Plaintiffs argue we should *not* retain jurisdiction but issue a remittitur directing the trial court to decide any remaining issues. Plaintiffs argue as

follows in part. A reviewing court has the authority to act as specified in Code of Civil Procedure section 43, which states in part: "[T]he courts of appeal, may affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had. In giving its decision, if a new trial be granted, the court shall pass upon and determine all the questions of law involved in the case, presented upon such appeal, and necessary to the final determination of the case. Its judgment in appealed cases shall be remitted to the court from which the appeal was taken." (See *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701 [107 Cal.Rptr.2d 149, 23 P.3d 43].) Further, Code of Civil Procedure section 912 states in part, "Upon final determination of an appeal by the reviewing court, the clerk of the court shall remit to the trial court a certified copy of the judgment or order of the reviewing court and of its opinion, if any." (See *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 774 [98 Cal.Rptr.2d 1, 3 P.3d 286].)

■ The developer and the department argue these statutory provisions which apply to appeals do not apply here. The developer and the department rely upon the general principle that litigation involving an environmental impact report should be promptly concluded. (§ 21167.1, subd. (a); *Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 500 [106 Cal.Rptr.3d 858, 227 P.3d 416].) More specifically, the developer and the department rely upon the following portion of section 21168.9, subdivision (a) which states in part, "(a) *If a court finds, as a result of a* trial, hearing, or *remand from an appellate court,* that any determination, finding, or decision of a public agency has been made without compliance with this division, the court shall enter an order that includes one or more of the following . . . ." (Italics added.) The developer and the department focus upon this italicized language as the basis for its contention concerning our future obligations. Section 21168.9, subdivision (a) then identifies a series of actions that may be taken as a result of a remand from an appellate court.[2]

---

[2] Section 21168.9, subdivision (a) states in its entirety: "(a) If a court finds, as a result of a trial, hearing, or remand from an appellate court, that any determination, finding, or decision of a public agency has been made without compliance with this division, the court shall enter an order that includes one or more of the following: [¶] (1) A mandate that the determination, finding, or decision be voided by the public agency, in whole or in part. [¶] (2) If the court finds that a specific project activity or activities will prejudice the consideration or implementation of particular mitigation measures or alternatives to the project, a mandate that the public agency and any real parties in interest suspend any or all specific project activity or activities, pursuant to the determination, finding, or decision, that could result in an adverse change or alteration to the physical environment, until the public agency has taken any actions that may be necessary to bring the determination, finding, or decision into compliance with this division. [¶] (3) A mandate that the public agency take specific action as may be necessary to bring the determination, finding, or decision into compliance with this division."

■ Section 21168.9, subdivision (b) limits the authority of a court to "include only those mandates which are necessary" to achieve compliance with the California Environmental Quality Act (§ 21000 et seq.). Section 21168.9, subdivision (b) contains three relevant provisions. The first aspect limits the court's mandate to those matters necessary to achieve compliance with the California Environmental Quality Act: "Any order pursuant to subdivision (a) shall include only those mandates which are necessary to achieve compliance with this division and only those specific project activities in noncompliance with this division." (§ 21168.9, subd. (b).) The order shall be made by the issuance of a peremptory writ of mandate specifying what action by the public agency is necessary to comply with this division. The second aspect of section 21168.9, subdivision (b) imposes a three-fold severability requirement if only a limited portion of the proposed project is to be set aside: "However, the order shall be limited to that portion of a determination, finding, or decision or the specific project activity or activities found to be in noncompliance only if a court finds that (1) the portion or specific project activity or activities are severable, (2) severance will not prejudice complete and full compliance with this division, and (3) the court has not found the remainder of the project to be in noncompliance with this division." (See *Anderson First Coalition v. City of Anderson* (2005) 130 Cal.App.4th 1173, 1181 [30 Cal.Rptr.3d 738]; 2 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 2d ed. 2016) § 23.124, pp. 23-140 to 23-141.) The final aspect of section 21168.9, subdivision (b) states a trial court retains jurisdiction by way of a writ of mandate to ensure the public agency has complied with the California Environmental Quality Act: "The trial court shall retain jurisdiction over the public agency's proceedings by way of a return to the peremptory writ until the court has determined that the public agency has complied with this division." (See *Ballona Wetlands Land Trust v. City of Los Angeles* (2011) 201 Cal.App.4th 455, 479 [134 Cal.Rptr.3d 194].)

According to the developer and the department, section 21168.9, subdivision (a) vests this court with the power to supervise compliance with our decision. This is because we have acted "as a result of a . . . remand from an appellate court." (*Ibid.*) In addition, the developer and the department rely upon the following language in our Supreme Court's opinion: "On remand, the Court of Appeal shall decide whether, in light of our exhaustion holding, the Native American cultural resource and steelhead smolt claims warrant reexamination on the merits. The Court of Appeal shall further decide, or remand for the superior court to decide, the parameters of the writ of mandate to be issued. (See § 21168.9.)" (*Center for Biological Diversity, supra*, 62 Cal.4th at p. 240.) According to the developer and the department,

our Supreme Court's language and section 21168.9, subdivision (a) give us the authority to issue our own writ of mandate and supervise compliance therewith.

### B. Standard of Review and the Presence of Ambiguous Statutory Language

■ We are construing the effect of section 21168.9, subdivision (a) on our situation. Our Supreme Court has explained: "When construing a statute, we look first to its words, ' "because they generally provide the most reliable indicator of legislative intent." [Citation.] We give the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose [citation].' (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529–530 [120 Cal.Rptr.3d 531, 246 P.3d 612].)" (*In re Ethan C.* (2012) 54 Cal.4th 610, 627 [143 Cal.Rptr.3d 565, 279 P.3d 1052].) According to our Supreme Court: " 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citation.] 'Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation.' [Citation.]" (*Pineda v. Williams-Sonoma Stores, Inc., supra*, 51 Cal.4th at p. 530; see *In re Ethan C., supra*, 54 Cal.4th at p. 627.)

As noted, the developer and the department focus upon the language in section 21168.9, subdivision (a). They rely on the language that "as a result of . . . remand from an appellate court" and argue we may issue a writ of mandate. (*Ibid.*) As noted, section 21168.9, subdivision (a)(1) through (3) specifies potential aspects of the "court['s]" writ of mandate. Hence, they argue, we are the "court" that has the authority to issue the writ of mandate directed at the department. We are satisfied that the term "appellate court" in our context is subject to some ambiguity. (§ 21168.9, subd. (a).) Although the term "appellate court" generally refers to the Court of Appeal or an appellate division, our Supreme Court also decides appeals. And it can be logically argued that when the Supreme Court remands an appeal as it did here, section 21168.9, subdivision (a) permits us to issue a writ of mandate. The developer and the department add to this textual analysis by adverting to the need for prompt resolution of California Environmental Quality Act litigation. (§ 21167.1, subd. (a) ["In all actions or proceedings brought pursuant to Sections 21167, 21168, and 21168.5, including the hearing of an action or proceeding on appeal from a decision of a lower court, all courts in which the action or proceeding is pending shall give the action or proceeding preference over all other civil actions, in the matter of setting the action or proceeding

for hearing or trial, and in hearing or trying the action or proceeding, so that the action or proceeding shall be quickly heard and determined."]; *Stockton Citizens for Sensible Planning v. City of Stockton, supra,* 48 Cal. 4th 481, 500 [" 'The Legislature has obviously structured the legal process for a [California Environmental Quality Act] challenge to be speedy, so as to prevent it from degenerating into a guerilla war of attrition by which project opponents wear out project proponents.' "].) And the Courts of Appeal do have original mandate jurisdiction. (Cal. Const., art. VI, § 10 ["The . . . courts of appeal . . . and their judges have original jurisdiction in . . . proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition."]; *Brosnahan v. Brown* (1982) 32 Cal.3d 236, 241 [186 Cal.Rptr. 30, 651 P.2d 274] [original proceeding filed in Court of Appeal and transferred to our Supreme Court].) In light of the foregoing, we will evaluate the circumstances leading up to the enactment of section 21168.9, subdivision (a) and its reference to a remand from an appellate court.

### C. Limited Legislative History Concerning Section 21168.9

Section 21168.9 was introduced as Senate Bill No. 1079 (1983–1984 Reg. Sess.) (Senate Bill No. 1079). When originally introduced on March 4, 1983, Senate Bill No. 1079 made no reference to the issue of the scope of a writ of mandate to be issued in an environmental case. Rather, when originally introduced, Senate Bill No. 1079 related to costs of suit and attorney fees in environmental litigation involving low- or moderate-income housing projects. (Sen. Bill No. 1079, as introduced Mar. 4, 1983; Sen. Com. on Housing and Urban Affairs, Rep. on Sen. Bill No. 1079, Mar. 4, 1983, p. 1.) Later, while still initially pending in the upper house, Senate Bill No. 1079 was amended to address other zoning and public planning issues and environmental matters.

On July 25, 1983, Robert K. Break of the law firm of Latham & Watkins wrote a letter to Maxine Harris Brookner. Mr. Break's letter proposed an amendment to the California Environmental Quality Act. Mr. Break's letter was received while Senate Bill No. 1079 was under consideration in the upper house. Ms. Brookner was a Senate Committee on Housing and Urban Affairs staffer. Mr. Break requested that legislation be adopted providing for greater flexibility when selecting remedies in the case of a California Environmental Quality Act violation. Mr. Break argued the California Environmental Quality Act should be amended to provide more focused remedies other than entirely voiding an environmental decision. Mr. Break wrote to Ms. Brookner: "[G]iven the cost associated with the delay of any public or private works project and the sensitivity of many such projects to any delay, I think it is appropriate to consider some statutory direction to the courts

recognizing there are appropriate situations where the relief granted upon a finding of [a California Environmental Quality Act] violation should be something less drastic than mandated voidance of the decision approving the project. In many situations, an expedited reconsideration of the decision by the lead agency under court supervision could minimize delay while fully meeting the letter and intent of [the California Environmental Quality Act]." Thereafter, Senate Bill No. 1079 passed the upper house. No action was taken at this time on Mr. Break's letter.

On May 8, 1984, Senate Bill No. 1079, while pending in the Assembly, was amended to propose the adoption of section 21168.9. As it did later upon ultimate passage, the newly drafted Legislative Counsel's Digest stated in part: "The act specifies procedures and requirements to challenge a determination, finding, or decision of a public agency under the act, including petitions to the court for an order of administrative mandate, as specified. [¶] This bill would require a court, if it finds, as a result of a trial, hearing, or remand from an appellate court that a determination, finding, or decision of a public agency has been made without compliance with the California Environmental Quality Act, to enter an order by the issuance of a peremptory writ of mandate including one or more specified orders specifying what action by the public agency is necessary to comply with the act. . . . [¶] . . . The bill would require the court to retain jurisdiction over the public agency's proceedings by way of a return to the peremptory writ until the court has determined that the public agency has complied with the act. The bill would also declare that its provisions do not authorize a court to direct any public agency to exercise its discretion in any particular . . . way." (Italics omitted.) As can be noted, in terms of the remand from an appellate court language, the Legislative Counsel's Digest endeavors to summarize the text appearing in section 21168.9, subdivision (a). The Assembly adopted the entirely rewritten Senate Bill No. 1079 and returned it to the upper house on May 29, 1983. The Legislative Counsel's Digest is the only document prepared while the legislation was pending in the Assembly that sheds any light on Legislature's intentions in enacting Senate Bill No. 1079.

Only one Senate committee report discusses the language of section 21168.9, subdivision (a) after Senate Bill No. 1079 was amended in the Assembly. An unfinished business report prepared by the Senate Democratic Caucus reiterated the language concerning "remand from an appellate court" but shed no light on the subject. (Sen. Democratic Caucus, Analysis of Sen. Bill No. 1079, as amended May 8, 1984, pp. 1–2.) On June 21, 1984, the Senate unanimously refused to concur in the Assembly amendments, which in essence rewrote Senate Bill No. 1079 to propose section 21168.9. (7 Sen. J. (1983–1984 Reg. Sess.) p. 12134.) A conference committee was appointed; it recommended adoption of the Assembly amendments to Senate Bill No. 1079, which proposed enactment of section

21168.9. Both the Senate and Assembly unanimously adopted the conference committee report and both houses unanimously voted to enact section 21168.9. (10 Assem. J. (1983–1984 Reg. Sess.) p. 19010; 8 Sen. J. (1983–1984 Reg. Sess.) p. 14273.) There is little of consequence in the committee reports or other legislative documents that sheds light on the Legislature's expectations in enacting the remand from an appellate court language. More critically, there is nothing in the Senate Bill No. 1079's sparse legislative history that alters the normal processing of environmental litigation on direct appeal, as is our case here. Nothing in Senate Bill No. 1079's legislative documents suggests intermediate appellate courts were granted, in cases on direct appeal, authority to issue their own writs of mandate. And nothing in those papers suggests a legislative intention, when a case is on direct appeal, to grant us the authority to supervise the implementation of a writ of mandate.

### D. Other Provisions of the California Environmental Quality Act and Appellate Practice Militate Against Holding That on Direct Appeal We May Issue a Writ of Mandate and Supervise Its Implementation.

#### 1. Other legal provisions concerning trial court jurisdiction over California Environmental Quality Act enforcement and administrative mandate procedure

Other legal and procedural provisions are inconsistent with the legislative intent to permit an appellate court, on direct appeal, to issue a writ of mandate directly to the lead agency. First, we examine California Environmental Quality Act enforcement practice in 1984 when section 21168.9 was enacted. Since 1972, if a litigant desires to challenge an environmental impact report's certification, the Legislature has required a Code of Civil Procedure section 1094.5 administrative mandate petition be filed. And the practice has always been to file a Code of Civil Procedure section 1094.5 administrative mandate petition in superior court. In 1970, the California Environmental Quality Act was adopted with the enactment of new sections 21000 through 21151. (Stats. 1970, ch. 1433, § 1, pp. 2780–2783.) Former section 21100, subdivision (a) required a "detailed statement by a responsible state official" be written describing a proposed action's environmental impact. The 1970 legislation made no reference to judicial enforcement of the new environmental legislation. In 1972, sections 21060 through 21172.5 were adopted, which substantially amended the 1970 version of the California Environmental Quality Act. (Stats. 1972, ch. 1154, § 1, pp. 2271–2280.) Former section 21168 required that any action challenging a public agency's determination under the California Environmental Quality Act must be filed in accordance with Code of Civil Procedure section 1094.5. (Stats. 1972, ch. 1154, § 15, pp. 2276, 2278.)

As it was in effect in 1972, Code of Civil Procedure section 1094.5 had language that was solely consistent with the filing of administrative mandate petitions in the trial court. (Stats.1949, ch. 358, § 1, pp. 638–639.) For example, Code of Civil Procedure former section 1094.5, subdivision (a) required that the petition be heard by "the court sitting without a jury"; referred to the filing of the "respondent's points and authorities" along with the administrative record (Code Civ. Proc., former § 1094.5, subd. (a)); the entry of judgment (Code Civ. Proc., former § 1094.5, subds. (d)–(e)); the potential entry of an order staying the administrative decision until the filing of a notice of appeal (Code Civ. Proc., former § 1094.5, subd. (f); specifying the duration of the stay by operation of law after the filing of a notice of appeal. (Code Civ. Proc., former § 1094.5, subd. (f).)

And any filing in a trial court would have been the superior court. In 1972, neither the municipal nor justice courts had jurisdiction to hear administrative mandate petitions. As can be noted, this language is inconsistent with the direct filing of a Code of Civil Procedure section 1094.5 administrative mandate petition in an appellate court. (As we will explain later, we do not foreclose that possibility. But our point is that the practice in 1984 when section 21168.9 was enacted was for administrative mandate petitions to be filed in the superior court.)

We now turn to the legislative events in 1984 when section 21168.9, with its "remand from an appellate court" language, was adopted. The 1984 version of Code of Civil Procedure section 1094.5, the enforcement provision for California Environmental Quality Act, continued with the references to a "court sitting without a jury"; "respondent's points and authorities"; the entry of a judgment; and stays pending appeal. (Code Civ. Proc., former § 1094.5, subds. (a), (e), (f), (g), and (h)(3); Stats. 1982, ch. 812, § 3, pp. 3102–3105.) Code of Civil Procedure section 86 in 1984 specified the jurisdiction of the justice and municipal courts. The 1984 amended version of Code of Civil Procedure section 86 did not vest the municipal or justice courts with jurisdiction over California Environmental Quality Act litigation. Nor did the 1984 version of Code of Civil Procedure section 86 vest those courts with the authority to rule on a Code of Civil Procedure section 1094.5 administrative mandate petition. (Stats. 1984, ch. 1719, § 1.1, pp. 6229–6231.)

No statute explicitly provided for filing a mandate petition to challenge an environmental impact report certification in the Courts of Appeal. Section 21168.6 specified, as it does now, that a mandate petition "against the Public Utilities Commission" involving California Environmental Quality Act compliance must be filed in the Supreme Court. (Stats. 1972, ch. 1154, § 1, pp. 2271, 2278.) Also, in 1984, the Legislature adopted section 21167.6,

subdivisions (a) through (c),[3] which imposed time requirements for the filing of the administrative record with the court. The sole exception was for suits against the Public Utilities Commission. (Stats. 1984, ch. 1514, § 12, pp. 5342–5343.) But as adopted in 1984, section 21167.6, subdivision (d) also imposed time limits for the preparation of a clerk's transcript on appeal. And, section 21167.6, subdivision (d) permitted the use of an appendix on appeal. And section 21167.6, subdivisions (d) through (f) imposed limits on briefing and scheduling requirements *on appeal*. (Stats. 1984, ch. 1514, § 12, pp. 5342, 5343.)[4] The 1984 legislative record indicates the Legislature was aware, when section 21168.9 was adopted, that the practice was for environmental impact report litigation to be commenced in the superior court.

### 2. Appellate courts' powers and practice on direct appeal

■ There is no evidence the Legislature intended when an environmental impact report's certification was litigated on appeal to alter the established procedures for remitting jurisdiction of the trial court. As noted, now, as in 1984, an appellate court's authority extended to affirmance or reversal and modification of an appeal from judgment or order. (Code Civ. Proc., § 43.) And after making one of those decisions, affirmance, reversal, modification or any combination thereof, the Courts of Appeal are required to remit the cause

---

[3] As adopted in 1984, section 21167.6, subdivisions (a) through (c), the provisions relating to the filing of the administrative record with the "court," stated: "Notwithstanding any other provision of law, in all actions brought pursuant to Section 21167, except those involving the Public Utilities Commission: [¶] (a) At the time the action is filed, the petitioner shall file a request that the respondent public agency prepare the record of proceedings relating to the subject of the action. The request, together with the petition, shall be served upon the public agency not later than 10 business days after the action is filed. [¶] (b) The public agency shall prepare and certify the record of proceedings not later than 60 days after the request specified in subdivision (a) is served upon the public agency. The parties shall pay any costs or fees imposed for the preparation of the record of proceedings in conformance with any law or rule of court. The petitioner may elect to prepare the record of proceedings or the parties may agree to an alternative method of preparation of the record of proceedings, subject to the certification of its accuracy by the public agency, within the time limit specified in this subdivision. [¶] (c) The time limit established by subdivision (b) may be extended only upon stipulation of all parties who have been properly served in the action or upon order of the court. Extensions shall be liberally granted by the court when the size of the record of proceedings renders infeasible compliance with the time limit specified in subdivision (b) There is no limit on the number of extensions which may be granted by the court, but no single extension shall exceed 60 days unless the court determines that a longer extension is in the public interest." (Stats. 1984, ch. 1514, § 12, pp. 5342–5343.)

[4] As adopted in 1984, section 21167.6, subdivision (d), the provision relating to preparation of the record on *appeal*, stated: "(d) The clerk of the superior court shall prepare and certify the clerk's transcript on appeal not later than 60 days after the notice designating the papers or records to be included in the clerk's transcript is filed with the superior court, provided that the party or parties pay any costs or fees for preparation of the clerk's transcript imposed in conformance with any law or rules of court. Nothing contained in this subdivision shall preclude election to proceed pursuant to Rule 5.1 of the California Rules of Court."

to court from which the appeal was taken. (*Ibid.*; Code Civ. Proc., § 912; see *Griset v. Fair Political Practices Com., supra*, 25 Cal.4th at p. 701.) These are well-established principles of appellate practice. The Legislature did not expressly change these rules in the case of environmental litigation. When section 21168.9, subdivision (a) was adopted, the Legislature did not expressly grant us the power to issue a writ of mandate.

■ And, there is no basis for *implying* the Legislature intended in enacting section 21168.9 to modify the well-established procedures for appeals digested in the immediately foregoing paragraph. Stated differently, we may not imply a repeal or modification of the Code of Civil Procedure sections 43 and 912 remittitur requirements because of the enactment of section 21168.9. Repeals by implication are disfavored. (*People v. Siko* (1988) 45 Cal.3d 820, 824 [248 Cal.Rptr. 110, 755 P.2d 294] ["As a general rule of statutory construction, of course, repeal by implication is disfavored."]; *Flores v. Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 171, 176 [113 Cal.Rptr. 217, 520 P.2d 1033] ["[A]ll presumptions are against a repeal by implication."].) Our Supreme Court has explained: "Absent an express declaration of legislative intent, we will find an implied repeal 'only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." ' " (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476–477 [66 Cal.Rptr.2d 319, 940 P.2d 906], quoting *In re White* (1969) 1 Cal.3d 207, 212 [81 Cal.Rptr. 780, 460 P.2d 980].)

This presumption against the implied repeal of Code of Civil Procedure sections 43 and 912 is of special emphasis given the historic nature of the structure of the California appellate process. In 1850, the Legislature specified the powers of the Supreme Court and the role of the remittitur: "The Supreme Court may reverse, affirm, or modify, the judgment or order appealed from, and its judgment shall be remitted as soon as practicable, after judgment pronounced, to the Court below, to be enforced according to law." (Stats. 1850, ch. 14, § 7, p. 57; see *Grogan v. Ruckle* (1850) 1 Cal. 193, 194.) Later in 1850, the Legislature enacted "AN ACT to regulate proceedings in Civil Cases in the District Court, the Superior Court of the City of San Francisco, and Supreme Court" which: reiterated the power of the Supreme Court to "reverse, affirm, or modify any judgment, order or determination, appealed from in whole or in part"; directed that the Supreme Court's judgment or order "be remitted to the District Court"; and required, "When the judgment of the Supreme Court is remitted to the Court below, the clerk of the Supreme Court shall certify the costs of the appeal . . . ." (Stats. 1850, ch. 142, §§ 280, 283, pp. 428, 453.) In 1851, the Legislature once again defined the powers of the Supreme Court thusly: "This Court may reverse, affirm, or modify the judgment or order appealed from, in the respect

mentioned in the notice of appeal, as to any and all of the parties, and may set aside, confirm, or modify any or all of the proceedings subsequent to, and dependent upon, such judgment or order; and may, if necessary or proper, order a new trial." (Stats. 1851, ch. 1, § 8, p. 10.)

The Code of Civil Procedure was enacted in 1872. (See *First Nat. Bank v. Kinslow* (1937) 8 Cal.2d 339, 343 [65 P.2d 796]; *Hogoboom v. Superior Court* (1996) 51 Cal.App.4th 653, 660 [59 Cal.Rptr.2d 254].) As enacted in 1872, Code of Civil Procedure section 45 stated: "The Court may reverse, affirm, or modify any order or judgment appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceeding to be had. Its judgment must be remitted to the Court from which the appeal was taken." (1 Ann. Code Civ. Proc., § 45 (1st ed. 1872, Haymond & Burch, commrs.-annotators) p. 49.) In 1880, Code of Civil Procedure former section 45 was moved to section 53. The 1880 version of Code of Civil Procedure former section 45 maintained the "affirm, reverse, or modify" language and concluded, "Its judgment in appealed cases shall be remitted to the Court from which the appeal was taken." (Code Amends. 1880, ch. 35, § 53, p. 25.) In 1933, Code of Civil Procedure former section 53 was amended to clarify that the power "to affirm, reverse, or modify" extended to the Court of Appeal. As in the case of the 1880 version, the 1933 amendment explicitly stated the judgment in an appealed case was to be remitted to the trial court. (Stats. 1933, ch. 743, § 6, p. 1807.) In 1967, Code of Civil Procedure former section 53 was renumbered as section 43 and amended to state as it does now. (Stats. 1967, ch. 17, § 5, p. 827.) Since 1850, the powers of appellate courts have been limited "to affirm, reverse, or modify" judgments or orders and the decision on appeal is to be remitted to the trial court.

■ Finally, the department and developer argue that we should somehow supervise compliance with any writ of mandate we can issue. Section 21168.9, subdivision (b) explains who retains jurisdiction to supervise a writ of mandate issued to enforce compliance with the California Environmental Quality Act: "The trial court shall retain jurisdiction over the public agency's proceedings by way of a return to the peremptory writ until the court has determined that the public agency has complied with this division." The Legislature has explicitly vested the trial court with the authority to retain jurisdiction to ensure the department has complied with the California Environmental Quality Act. Any suggestion we can retain jurisdiction to supervise any return to the writ of mandate is contradicted by the express language of section 21168.9, subdivision (b).

## E.   Conclusion

■ Nothing in the language of 21168.9, subdivision (a), the events leading to its adoption or other provisions of law permit us, *on direct appeal*,

to issue the writ of mandate. That is a matter for a trial court. For the foregoing reasons, we conclude we do not have the authority to issue our own writ of mandate. Rather, our duty is to decide issues pertinent to the writ of mandate's scope, insofar as possible, and then remit the matter to the trial court. And we further conclude our Supreme Court directed us to determine what language should be utilized by the trial court.

■ Nothing we have said herein applies to cases where an original proceeding is initially commenced in the Court of Appeal. (Cal. Const., art. VI, § 10; see *Raven v. Deukmejian* (1990) 52 Cal.3d 336, 340 [276 Cal.Rptr. 326, 801 P.2d 1077].) No original proceeding has been filed with this court. Similarly, we are not discussing specified environmental challenges filed against the Public Utilities Commission, which are filed in our Supreme Court. (§ 21168.6.) Further, nothing we have said applies to cases where a supersedeas petition is filed and conditions are imposed which can lead to an early compliance with environmental requirements. (Cal. Rules of Court, rule 8.112(d)(1) ["The court may issue the writ on any conditions it deems just."]; *County of Inyo v. Yorty* (1973) 32 Cal.App.3d 795, 802–814 [108 Cal.Rptr. 377] [supersedeas petition deemed to be mandate petition and the Court of Appeal issued a writ of mandate ordering preparation of an environmental impact report and limiting ground water pumping].) No supersedeas petition has been filed with us. Finally, in a related supersedeas scenario, nothing we have written applies to issue of injunctions designed to preserve the status quo so as to maintain the jurisdiction of this court. (Code Civ. Proc., § 923 ["The provisions of this chapter shall not limit the power of a reviewing court or of a judge thereof to stay proceedings during the pendency of an appeal or to issue a writ of supersedeas or to suspend or modify an injunction during the pendency of an appeal or to make any order appropriate to preserve the status quo, the effectiveness of the judgment subsequently to be entered, or otherwise in aid of its jurisdiction."]; *People ex rel. S. F. Bay etc. Com. v. Town of Emeryville* (1968) 69 Cal.2d 533, 537 [72 Cal.Rptr. 790, 446 P.2d 790] [Supreme Court's inherent powers permit it to issue an injunction in aid of its own jurisdiction and to preserve the status quo]; *County of Inyo v. City of Los Angeles* (1976) 61 Cal.App.3d 91, 100–101 [132 Cal.Rptr. 167] [Court of Appeal uses injunctive order powers to reset an interim pumping rate from the subsurface pool of the Owens Valley Groundwater Basin].) No specific injunctive relief request has been presented to us. This is not merely a case involving an injunction but the certification of an environmental impact; approval of a streambed alteration agreement; approval of the resource management and development plan; adoption of the Spineflower Conservation Plan and streambed alteration agreement; and issuance of two incidental take permits. Our analysis is limited to the argument that, based on section 21168.9, we should issue a writ of mandate and supervise the department's compliance therewith. Section 21168.9 does not empower us to do so.

Upon remittitur issuance, the trial court is to proceed in compliance with section 21168.9. We have reversed the judgment except as to the greenhouse gas emission and BIO-44 and BIO-46 issues. This will entail at a minimum setting aside those two portions of the environmental impact report. But beyond that, we leave further matters in the trial court's good hands. Whether to maintain the injunction against *any* development in effect or partially certify the environmental impact report depends on competing factual issues including section 21168.9, subdivision (b) severance issues. (*LandValue 77, LLC v. Board of Trustees of California State University* (2011) 193 Cal.App.4th 675, 680–683 [122 Cal.Rptr.3d 37]; *Anderson First Coalition v. City of Anderson, supra,* 130 Cal.App.4th at pp. 1173–1181.) One of the issues, changing the bridge design over the Santa Clara River so *no* threespine unarmored stickleback are taken, may be a comparatively uncomplicated engineering decision. But the other issue, the greenhouse gas emission question, may be very complicated. (See *Center for Biological Diversity, supra,* 62 Cal.4th at pp. 225–231.) It is speculatively injudicious for us to decide these matters and that is why the scope of our remittitur is narrowly drawn.

## VI. DISPOSITION

The judgment is affirmed in part and reversed in part. First, the judgment is affirmed as to the finding that mitigation measures BIO-44 and BIO-46 violate Fish and Game Code section 5515. Second, the judgment is reversed as to the finding that the selection of the Health and Safety Code section 38505 greenhouse gas emission reduction goals was an abuse of discretion. Upon remittitur issuance, the trial court shall find the department could select the Health and Safety Code section 38505 greenhouse gas emissions reduction goals as a significance criterion. Third, the judgment is reversed as to the finding that the department could not use a hypothetical business as usual scenario for evaluating greenhouse gas emission impacts. Upon remittitur issuance, the trial court is to enter a finding that the department can use a hypothetical business as usual scenario for evaluating greenhouse gas emission impacts. Fourth, the judgment is affirmed as to the trial court's ruling there is no substantial evidence the project's greenhouse gas emissions will not result in a cumulatively significant environmental impact. Upon remittitur issuance, the trial court is to enter a finding that there is no substantial evidence the project's greenhouse gas emissions will not result in a cumulatively significant environmental impact. Fifth, the trial court's remaining findings concerning Native American resources, San Fernando Valley spineflower conservation, reliance on the specific plan and steelhead smolt are reversed. Once the remittitur issues, the trial court is to issue its writ of mandate as specified in the unpublished portion of this opinion. Further, the

trial court is to proceed in compliance with Public Resources Code section 21168.9 including fashioning appropriate injunctive orders including any changes to the permits if necessary. All parties are to bear their own costs of appeal.

Kriegler, J., and Baker, J., concurred.

A petition for a rehearing was denied August 10, 2016, and the opinion was modified to read as printed above. The petition of respondent Wishtoyo Foundation/Ventura Coastkeeper for review by the Supreme Court was denied October 12, 2016, S236776.